OPINION OF THE JUSTICES OF THE SUPREME COURT IN RESPONSE TO A QUESTION PROPOUNDED BY THE GOVERNOR OF DELAWARE.

*(October* 30, 1963.)

Supreme  Court  of  the  State  of  Delaware.

To His Excellency Elbert N. Carvel
Governor  of  Delaware:

Reference is made to your letter dated September 24, 1963, addressed to the Chief Justice, asking, pursuant to 10 *Del. C.* § 141, the opinion of the Justices of the Supreme Court upon two questions. These questions are as follows:

"(1)   Whether Section 18, Article III of the Constitution of the State of Delaware, has been amended by

the enactment of Chapter 11 of Volume 54, Laws of Delaware;" and

"(2) Whether Section 7, Article II of the Constitution of the State of Delaware has been amended by the enactment of Chapter 12, Volume 54, Laws of Delaware."

With respect to the amendment to Article III, Section 18 of the Constitution, *Del. C.*, the facts which give rise to the question propounded are briefly that the 121st General Assembly enacted 53 Laws, Chapter 378, titled, "An Act to Amend Article Three of the Constitution of the State of Delaware," which title was contrary to the past practice of the General Assembly which, if followed, would have titled the said act, "An Act Proposing an Amendment to Article III of the Constitution of the State of Delaware."

Subsequently, the 122nd General Assembly purported to finally adopt the proposed constitutional amendment by the enactment of 54 Laws, Chapter 11, under the title, "An Act to Amend Article III of the Constitution of the State of Delaware." If the past practice of the General Assembly in agreeing to proposed constitutional amendments had been followed, this act would have been titled, "An Act Agreeing to a Proposed Amendment to Article III of the Constitution of the State of Delaware."

With respect to the amendment to Article II, Section 7 of the Constitution of the State of Delaware, the facts which give rise to the question propounded are briefly that the 121st General Assembly enacted 53 Laws, Chapter 379, titled. "An Act Proposing an Amendment to the Constitution of the State of Delaware Relating to the President Pro Tempore, Speaker and Other Officers; Absence of Presiding Officers."

Subsequently, the 122nd General Assembly enacted 54 Laws, Chapter 12, purporting to finally adopt this proposed constitutional amendment, which act is titled, "An Act Proposing an Amendment to the Constitution of the State of Delaware Relating to the President Pro Tempore, Speaker, Other Officers; Absence of Presiding Officers." If the past practice of the General Assembly had been followed in agreeing to this proposed amendment the act so agreeing would have been titled, "An Act Agreeing to a Proposed Amendment to the Constitution of the State of Delaware Relating to the President Pro Tempore, Speaker and Other Officers; Absence of Presiding Officers."

While you have requested our opinion upon two separate questions, in reality they may be considered as basically raising one question for our opinion only.

It is suggested that Article II, Section 16 of the Constitution invalidates the attempted amendments of the Constitution by he action recited above. Article II, Section 16 provides as follows:

"Section 16. No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

The basic question, the answer to which determines the answers to the precise questions you have asked, is whether or not Article II. Section 16 of the Constitution has any application to bills proposing and agreeing to amendments to the Constitution. In our opinion it has no such application.

The effect and meaning of Article II, Section 16 has many times been passed upon by our courts. Uniformly it has been held that the purpose of this section of the Constitution is to insure that the titles of bills

shall be sufficiently comprehensive to give the people of the State, as well as the members of the General Assembly, fair and reasonable notice of the subject matter of the proposed legislation. Fundamentally, it is designed to prevent deception of the general public and the members of the General Assembly by titles to bills which give no adequate information of the subject matter of the bills. *Klein v. National Pressure Cooker Co.*, 31 Del.Ch. 459, 64 A.2d 529; *State ex rel. Craven v. Schorr*, 11 Terry 365, 131 A.2d 158.

This provision was included in the Constitution in order to insure adequate notice to the people and members of the General Assembly because of the fact that an ordinary bill or enactment becomes effective as law by the action of one General Assembly and approval by the Governor. Unless, therefore, some requirement of adequate notice is included, it might well be that legislation, the content of which was inadequately brought to the public attention, or so-called sleeper legislation, might well slip through one General Assembly.

No such situation exists with respect to the amendment of the Constitution. Amendments to the Constitution are governed by Article XVI, Section 1, in the following language:

"Section 1. Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two-thirds of all the members elected to each House, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, and the Secretary of State shall cause such proposed amendment or amendments to be published three months before the next general election in at least three newspapers in each county in which such newspapers shall be published;

and if in the General Assembly next after the said election such proposed amendment or amendments shall upon yea and nay vote be agreed to by two-thirds of all the members elected to each House, the same shall thereupon become part of the Constitution."

It is to be noted that any amendment may be proposed in either the Senate or House of the General Assembly, and if agreed to by two-thirds of all of the members elected to each House shall be entered upon the journals of the respective Houses. Thereafter, three months before the next general election at which a new General Assembly will be elected the Secretary of State is required to publish the proposed amendment to the Constitution. If, thereafter, at the next succeeding General Assembly two-thirds of all of the members elected to each House agree to the proposed amendment to the Constitution, the same shall thereupon become part of the Constitution.

It is therefore obvious that there is no necessity for the application of Article II, Section 16 to the proposal and final adoption of amendments to the Constitution because Article XVI, Section 1 effectively provides for notice to the general public and to prospective members of the next succeeding General Assembly of the content of such proposed amendment.

We think, therefore, that Article II, Section 16, designed to insure notice of the content of proposed legislation which may become final by the action of one General Assembly, has no application to the amendment of the Constitution under the method prescribed by Article XVI, Section 1. Furthermore, Article XVI, Section 1 does not prescribe any particular method, i.e., by bill or joint resolutions, of proposing and agreeing to a constitutional amendment. Since Article II, Section 16 refers only to the requirement of titles for bills and joint

resolutions, it obviously, on its face, has no application to an amendment to the Constitution. It consequently is immaterial whether or not any title given to a bill proposing or agreeing to an amendment to the Constitution contains within itself adequate notice of the content of the bill.

As a matter of fact, the former Court of General Sessions has specifically so held. *State v. Lyons,* 1 Terry 77, 5 A.2d 495. We have read this decision and agree entirely with its rationale. We furthermore find that this holding is in agreement with the general law of other states. 50 Am.Jur., Statutes, §§ 166, 167.

Accordingly, the answers to the two questions quoted above and contained in your letter are as follows:

(1)   The answer to Question 1 is in the affirmative.

(2)   The answer to Question 2 is in the affirmative.

Respectfully submitted,

CHARLES L. TERRY, Jr.

Chief Justice

DANIEL F. WOLCOTT

JAMES B. CAREY

Justices.